UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 19-cv-60497-BLOOM/Valle**

ALEXANDR KOZYREV,

      Plaintiff,

v.

DMITRY PONOMARENKO and
FATIMA ESENOVA,

      Defendants.

_____/

## <u>SECOND OMNIBUS ORDER</u>

**THIS CAUSE** is before the Court on four motions:

1.      Defendant Fatima Esenova's Motion for Clarification and/or Reconsideration of Certain Portions of Omnibus Order ("Motion for Reconsideration"), ECF No. [188]. Plaintiff Alexandr Kozyrev filed an Opposition, ECF No. [189], and Defendant Dmitry Ponomarenko filed an Opposition, ECF No. [192], to which Esenova filed a Consolidated Reply, ECF No. [203].

2.      Kozyrev's Cross-Motion to Vacate Judgment of March 10, 2020, Reconsider Order of August 18, 2020, and for Sanctions ("Cross-Motion to Vacate/Reconsider"), ECF No. [190]. Ponomarenko filed a Joinder, ECF No. [193] to the Cross-Motion. Esenova filed an Opposition, ECF No. [202] to the Cross-Motion, to which both Kozyrev and Ponomarenko replied, *see* ECF Nos. [205] & [206], respectively.

3.      Kozyrev's Request to Take Judicial Notice ("Motion for Judicial Notice"), ECF No. [197]. Ponomarenko filed a Joinder, ECF No. [198], to the Request. Esenova filed an Opposition, ECF No. [209], to the Request, to which both Kozyrev and Ponomarenko replied, *see* ECF Nos. [210] & [211], respectively.

4.        Esenova's Motion for Sanctions and Attorney's Fees ("Second Sanctions Motion"),

ECF No. [204]. Kozyrev filed an Opposition, ECF No. [212] and Ponomarenko filed an

Opposition, ECF No. [203].

The Court has carefully considered the motions, all opposing and supporting submissions,

the record in this case and the applicable law, and is otherwise fully advised. For the reasons that

follow, Motion to Reconsider is denied, the Cross-Motion to Vacate/Reconsider is denied, the

Motion for Judicial Notice is granted in part and denied in part, and the Second Motion for

Sanctions is denied.

## I.        BACKGROUND

The Court assumes the reader's familiarity with the facts and legal issues underlying this

case and does not repeat them in full.  Briefly, in the Cross-Motion to Vacate/Reconsider, Kozyrev

seeks to vacate a March 10, 2020 Final Judgment, ECF No. [143], following a jury verdict against

him, ECF No. [140], on his breach of contract and unjust enrichment claims. Kozyrev argues that

several of Esenova's trial exhibits consisted of confidential documents from Esenova and

Ponomarenko's Divorce Action,[1] which should not have been presented to the Court. *See* Mot. to

Vacate/Reconsider at 6–15; 18–20. Kozyrev's Motion for Judicial Notice urges the Court to take

notice of the Divorce Action docket sheet and conclude the documents therein were (and remain)

confidential. *See generally* Mot. for Judicial Notice. Kozyrev also argues the trial should have been

continued to remedy alleged translation issues occurring because he testified remotely. *See* Mot.

to Vacate/Reconsider at 15–17. Finally, Kozyrev avers Esenova has harassed, attacked, and

humiliated him. *See id.* at 20.–26

---

[1] All capitalized terms maintain their definitions from the first Omnibus Order unless otherwise noted.

Additionally, both Kozyrev and Ponomarenko, on the one hand, and Esenova on the other, seek reconsideration of the Court's Omnibus Order ("First Omnibus Order"), ECF No. [187]. In that Order, the Court addressed Esenova's Motion for Attorney's Fees ("First Sanctions Motion"), ECF No. [154], for Kozyrev's and Ponomarenko's alleged bad faith conduct in bringing this suit in the first instance, and up through and including trial. Pointing to ten alleged instances of misconduct, *see* Sanctions Mot. at 11–18, Esenova sought sanctions in the form of attorney's fees pursuant to 28 U.S.C. section 1927 and the Court's inherent powers, *see id.* at 2.

The First Omnibus Order addressed Esenova's arguments at length and agreed with her *in part*. Based on the record before it, the Court found Kozyrev and Ponomarenko engaged in three instances of misconduct that, when considered as a whole, amounted to bad faith. The Court concluded:

> Taken together, the following three events demonstrate bad faith: (1) Kozyrev and Ponomarenko's false and inconsistent claims regarding ownership of the Property; (2) Ponomarenko's testimony he was unaware of discovery requests seeking information substantiating the Loan Agreement notwithstanding his response to Esenova's discovery requests; and (3) Ponomarenko's conflicting testimony regarding the signing of the Loan Agreement.

First Omnibus Order at 23. The Court awarded partial sanctions pursuant to its inherent power and *did not* make an explicit finding that he entire lawsuit was brought in bad faith. Neither did the Court award sanctions pursuant to 28 U.S.C. section 1927, which provides for sanctions against *attorneys* (not parties) "who so multipl[y] the proceedings in any case unreasonably and vexatiously[.]" *Id.*

When considering the *amount* of sanctions to be imposed, the Court noted sanctions must be "calibrated to the damages caused" by the bad-faith conduct. First Omnibus Order at 31 (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017)). The Court also recognized that, given the procedural history of the case, it was "difficult to make a precise determination as

to when the damages began to flow." *Id.* at 32.  Because much of the bad-faith conduct occurred during trial, or was not recognized until then, the Court found the most conservative and prudent course of action was to award sanctions for fees billed in connection with the trial and engage in an overall percentage reduction of the same. *See id.*

Finally, the First Omnibus Order also addressed Kozyrev's and Ponomarenko's argument that one of Esenova's attorneys engaged in the unauthorized practice of law. *See id.* 32–33.  The Court rejected the argument. *See id.* at 33. Esenova's Second Sanctions Motion presently before the Court seeks Rule 11 sanctions "arising from motions, defenses and arguments alleging the 'unauthorized practice of law' as a defense to Esenova's [First Sanctions Motion]." Second Sanctions Mot. at 1.

## II.    LEGAL STANDARD

"Reconsideration is granted only in extraordinary circumstances and is committed to the sound discretion of the district judge." *Reiseck v. Universal Commc'ns of Miami, Inc.*, 141 F. Supp. 3d 1295, 1301 (S.D. Fla. 2015) (internal quotation marks and citations omitted).  "[T]here are three major grounds which justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice."  *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002) (alteration added; citations omitted). "A motion for reconsideration is not an opportunity for the moving party and their [sic] counsel to instruct the court on how the court 'could have done it better' the first time." *Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995). It is "an improper use of the motion to reconsider to ask the Court to rethink what the Court already thought through — rightly or

wrongly." *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (citations omitted; alterations adopted).

The third basis for reconsideration, clear error or manifest injustice "occurs where the Court 'has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. Such problems rarely arise and the motion to reconsider should be equally rare.'" *Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1292–93 (S.D. Fla. 2012) (alteration adopted; quoting *Compania de Elaborados de Cafe v. Cardinal Capital Mgmt., Inc*., 401 F. Supp. 2d 1270, 1283 (S.D. Fla. 2003)).  "In order to demonstrate clear error, the movant must do more than simply restate his or her previous arguments, and any arguments the movant failed to raise in the earlier motion will be deemed waived." *Compania de Elaborados de Cafe*, 401 F. Supp. 2d at 1283 (citation omitted); *see also Colomar v. Mercy Hosp., Inc*., 242 F.R.D. 671, 684 (S.D. Fla. 2007) ("[T]o the extent [the movant] merely reargues points previously considered and rejected by the Court, or tries to raise new arguments and point to new evidence that could have been raised earlier, this is insufficient grounds to satisfy the clear error or manifest injustice standard for granting a motion for reconsideration." (alterations added; citation omitted)).

## III.    DISCUSSION

### a.  Motion for Reconsideration

Esenova's Motion for Reconsideration amounts to a disagreement with the Court's analysis and does not present a basis for reconsideration.

Esenova argues the Court should have levied sanctions on Kozyrev's and Ponomarenko's attorneys pursuant to 28 U.S.C. section 1927 because neither man "could have prosecuted this fraudulent case without the guidance, assistance and continued support of their counsel." Mot. for

Reconsideration at ¶ 4. Esenova neglects the Court did *not* find that the entire lawsuit was baseless because there was not enough *record evidence* to make such a finding.  Instead, the Court labored through the record, found three instances of misconduct tending to show bad faith, and granted sanctions accordingly. *See* First Omnibus Order at 22–29. As to whether either Kozyrev or Ponomarenko was urged to engage in misconduct at the behest of their counsel, the Court will not — and cannot on the record before it — delve into the relationship between either Kozyrev or Ponomarenko and their attorneys. For instance, the Court cannot conclude, as Esenova urges, that Kozyrev's and Ponomarenko's counsel were responsible for alleged "fraud though repeated 'stipulations' that Ponomarenko owed a debt to Kozyrev based upon a phony loan agreement.'" That Esenova thinks the Court should have awarded sanctions against Kozyrev's and Ponomarenko's attorneys, instead of the parties themselves, is not a basis for reconsideration.[2]

Neither is Esenova's belief there is enough record evidence to award fees in connection with attorney work completed by attorneys other than Mr. Altschul and his associate. Esenova insists "it is *not* difficult to make a precise determination as to when damages began to flow; *damages began to flow with the filing of the lawsuit because the entire lawsuit was based upon a phony, nonexistent loan agreement*[.]" Mot. for Reconsideration at ¶ 11 (emphasis in original). Esenova neglects she made this argument in the First Sanctions Motion, the Court considered it thoroughly, and did not find enough record evidence to agree with Esenova in full.

---

[2] Esenova also spends a portion of her Motion arguing *counsel* and not Kozyrev made misrepresentations to the Court about Kozyrev's visa application. *See* Mot. for Reconsideration at ¶ 6. Kozyrev, on the other hand, argues he did not testify inconsistently about his visa at all, but misunderstood trial counsel's question regarding the same. *See* Kozyrev Opp. at 18 (stating "Kozyrev's answer regarding the efforts to obtain the U.S. entry visa addressed only his response to a question, as he understood it, whether he physically visited the Consulate Section of the U.S Embassy in Bangkok."). The Court declines to delve into this issue further because the visa issue ultimately did not act as a basis for the Court's decision to impose sanctions.

As to Kozyrev's and Ponomarenko's Oppositions, to the extent either may be construed as an independent motion to modify the sanctions imposed in the First Omnibus Order, the Court finds no basis for reconsideration. Kozyrev avers generally he is not familiar with American real estate law and was unaware of Ponomarenko's and Esenova's agreements concerning the Property. *See* Kozyrev Opp. at 15–17. Kozyrev also argues the Court found "inconsistencies" in his testimony even though "non consideration was accorded to the circumstances" — namely translation difficulties in testifying remotely and deprivation of sleep from testifying in a different time zone. Kozyrev notes "[d]eprivation of sleep, to question a person internationally, in some other contexts, was likened to torturing a witness, contrary to the applicable United Nations conventions." *Id.* at 19. Again, Kozyrev does not address or attempt to explain the three specific instances of misconduct the Court found to constitute bad faith.  And while the Court is sympathetic to the difficulties of remote testimony, the Court reminds Kozyrev that *he* initiated the lawsuit in this Court. Then, despite being informed of Kozyrev's visa issue less than one month before trial, the Court accommodated Kozyrev by allowing him to testify remotely and to adjust the trial schedule to accommodate his remote appearance by videoconference.

Like Kozyrev's Opposition, Ponomarenko's Opposition does nothing to address the three specific instances of bad faith identified by the Court in its First Omnibus Order. The Opposition states, without any specificity, "there was no bad faith on the part of Ponomarenko." Ponomarenko Opp. At 6. Ponomarenko's counsel also avers any "inconsistencies" identified by the Court were due to translation errors — but does not attempt to explain what the translation errors were. *See id.* at 7. Finally, Ponomarenko's counsel argues vigorously that no portion of the sanctions awarded against Ponomarenko and Kozyrev should be shifted to him. *See* Ponomarenko Opp. at 8–9. As noted, the sanctions as set forth in the First Omnibus Order remain unmodified.

**b. Cross Motion to Vacate/Reconsider and Motion for Judicial Notice**

Kozyrev's Cross-Motion to Vacate/Reconsider asks the Court to (1) vacate the March 10, 2020 Final Judgment following the jury verdict against him; (2) reconsider the Omnibus Order granting sanctions against Kozyrev and Ponomarenko; and (3) impose sanctions on Esenova "for violating the statutes of the State of Florida and the Rules of Judicial Administration of Florida." Cross-Mot. to Vacate/Reconsider at 5.

As a preliminary matter, Kozyrev does not present the Court with a coherent argument why it should reconsider the sanctions imposed against him or Ponomarenko. These arguments do appear to be made in Kozyrev's and Ponomarenko's Oppositions to Esenova's Motion for Reconsideration. To the extent those arguments can be deemed rearticulated in the Cross-Motion to Vacate/Reconsider, they are rejected.

Kozyrev focuses the bulk of the Cross-Motion to Vacate/Reconsider on the allegation that several of Esenova's trial exhibits were confidential should not have been presented to the Court "without the required Motion for Leave in the 17th Judicial Circuit, having exclusive jurisdiction over the document." Kozyrev continues "Esenova's counsel posed questions . . . around Exhibits 1, 6, and 7. . . intentionally converting that trial into a de facto extension of her divorce and enforcement proceedings." *Id.* at 9. Essentially, Kozyrev claims that three specific exhibits (consisting of documents from the Divorce Action) were inappropriately before the Court during trial, and therefore, the Judgment should be vacated against Kozyrev in full.

A motion for reconsideration is not an opportunity to relitigate what should have been argued in a *motion in limine* or at trial or discussed at the pre-trial conference. As noted by Esenova, Ponomarenko did not object to Exhibit 1 (Esenova's Petition for Dissolution of Marriage), Exhibit 6 (Esenova and Ponomarenko's Marital Settlement Agreement), or Exhibit 7 (the Final Judgment

entered in Divorce Action) on confidentiality grounds. *See* Joint Pretrial Stipulation ECF No. [86] at 23, 27. Instead, Kozyrev objected to the exhibits "as completely irrelevant to this trial, causing waste of time and misleading as to the issues to be tried and prejudicial to plaintiff as such." *Id.* Moreover, when the Marital Settlement Agreement was introduced at trial, Kozyrev argued the same was irrelevant and Ponomarenko argued it was not authenticated. Neither objected on confidentiality grounds. *See* Trial Tr., ECF No. [178] at 43:6–44:16. The Court admitted the exhibits over Kozyrev's and Ponomarenko's objections and refuses to relitigate the issue — to which the majority of the Cross-Motion to Vacate/Reconsider is devoted. Moreover, the Court rejects Kozyrev's and Ponomarenko's argument to sanction Esenova or her counsel for "divulging" confidential records. *See* Cross-Mot. to Vacate/Reconsider at 13.

The Court finds Kozyrev's remaining arguments — that Esenova (1) "forced her participation into meet-and-confer, harassed Alexandr Kozyrev in writing, sending him unsolicited messages," (2) "attack[ed] . . . Kozyrev [who] had never met with Esenova since 2013," and (3) "abuse[d] immunity [and was] driven by ulterior motives," Mot. at 20, 22–23 — reflect the parties' unfortunate mutual animosity, but do not provide a basis for reconsideration.

The Motion for Judicial Notice asks the Court to take Notice of the docket in the Divorce Action and make several findings of "adjudicative fact" including (1) the docket itself; (2) that trial exhibit 1 was and remains confidential; (3) that trial exhibit 6 was and remains confidential; (4) that trial exhibit 7 was and remains confidential; (5) that Esenova "pierc[ed the] Confidential Status of a May 18, 2020 Motion filed in the family division by disclosing it *to Kozyrev*, his attorneys and unspecified others; (6) that Esenova "pierc[ed the] Confidential Status of a June 26, 2020 Motion filed in the family division by disclosing it *to Kozyrev*, his attorneys and unspecified; and (7) that the Divorce Action docket sheet does not show Esenova obtained leave from the

Family Division to disclose the confidential records. Ponomarenko joins the Motion, and argues that Esenova's counsel, Altschul, was not authorized to access the documents on the Divorce Action docket because he was not Esenova's counsel of record in that case.

The Court finds no issue with taking judicial notice of the docket sheet in the Divorce Action, *see* Fed R. Evid. 201(b)(2) (allowing the Court to take judicial notice of a fact which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"), but declines Kozyrev's invitation to make the legal conclusion that Esenova violated the confidentiality provisions of the Family Division. Critically, Kozyrev and Ponomarenko's arguments are moot because they made no confidentiality-based objections to the foregoing exhibits to the Court before or during trial in this action.  Moreover, to the extent *Kozyrev* and not Ponomarenko objects to the disclosure of allegedly confidential documents, he lacks standing to do so as he was not a party to the Divorce Action.

### c.  Second Sanctions Motion

Esenova moves for Rule 11 Sanctions against Kozyrev and Ponomarenko arising from their unauthorized-practice-of-law argument made in defense to Esenova's First Sanctions Motion.  In short, Kozyrev and Ponomarenko argued one of Esenova's attorneys — Leonid Budyonny — engaged in the unauthorized practice of law, *see* Kozyrev's Opp. to [First Sanctions Motion], ECF No.  [156] & Ponomarenko's Opp. To [First Sanctions Motion] ECF No. [160], and Kozyrev filed a Cross-Motion . . . For Limited Discovery Concerning Unauthorized Practiced of Law ("Discovery Motion"), ECF No. [158]. The Court rejected the unauthorized-practice-of-law argument, noting it had no jurisdiction over the issue because the "Florida Supreme Court has delegated its authority over the investigation and prohibition of the unlicensed practice to the Florida Bar." *Gonczi v. Countrywide Home Loans, Inc.*, 271 F. App'x 928, 929–930 (11th Cir.

2008) (citation omitted); *see also id.* at 930 ("No private right of action exists for individuals to pursue an unauthorized-practice-of-law claim in the first instance[.]"). The Court also noted the unauthorized-practice-of-law argument did nothing to respond to the merits of the First Sanctions Motion. *See* First Omnibus Order at 33–34.

"Rule 11 sanctions are designed to discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001) (citation omitted). Sanctions are appropriate where a party files a pleading that "(1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) (footnote call number omitted).

The Court maintains its finding that the unauthorized-practice-of-law argument lacks merit, nor does it find Esenova has demonstrated Kozyrev or Ponomarenko acted in bad faith in making the same. Esenova alleges Kozyrev's counsel threatened to report Budyonny's alleged unauthorized-practice-of-law to the Florida Bar to deter Esenova from filing her First Sanctions Motion, *see* Second Sanctions Motion at ¶ 2, and submits an email from Kozyrev's counsel to her counsel, Altschul, stating in part "if you care about the forthcoming analysis at the Florida Bar, I suggest that you, not to aggravate your issues as even more egregious, withhold filing your Motion." *See id.* Ex A., ECF [204] at 13. While this communication is certainly concerning, the Court is not convinced Kozyrev's counsel believed — however wrongly —there was no basis for the unauthorized-practice-of-law argument or that the argument was made solely to harass Esenova. *See Lopez v. Yvette Pereyra Ans, M.D., P.A.*, No. 09-60734-Civ, 2010 WL 555918, at *1

(S.D. Fla. Feb. 11, 2010) ("Rule 11 is an extraordinary remedy, one to be exercised with extreme caution.").

Remarkably, however, in his Opposition to the Second Sanctions Motion, Kozyrev continues to make the unauthorized-practice-of-law argument, sating: "Kozyrev and his counsel did submit before, and submit now, that Budyonny engaged in unauthorized practice of law in this case, which is supported by substantial evidence." *Id.* at 2. Accordingly, the Court reminds Kozyrev and Ponomarenko that this argument has been rejected and further argument is improper.

## IV. CONCLUSION

For the foregoing reasons it is, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Fatima Esenova's Motion for Clarification and/or Reconsideration of Certain Portions of Omnibus Order, **ECF No. [188]**, is **DENIED**.

2. Kozyrev's Cross-Motion to Vacate Judgment of March 10, 2020, Reconsider Order of August 18, 2020, and for Sanctions **ECF No. [190]**, is **DENIED**.

3. Kozyrev's Request to Take Judicial Notice, **ECF No. [197]**, is **GRANTED** to the extent the Court will take judicial notice of the Divorce Action docket, but **DENIED** with respect to all other relief requested; and

4. Esenova's Motion for Sanctions and Attorney's Fees, **ECF No. [204]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 19, 2020.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record